Charlotte WESTERN,
Plaintiff–Appellant,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services,
Defendant–Appellee.

No. 80–3386
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 9, 1981.

Martha Bergmark, Hattiesburg, Miss., for plaintiff–appellant.

George L. Phillips, U. S. Atty., L. K. Travis, Asst. U. S. Atty., Jackson, Miss., Haila N. K. Coleman, Staff Atty., Atlanta, Ga., Dept. of H & HS, for defendant–appellee.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Charlotte Western appeals from the judgment of the district court affirming the denial of her claim for disability and supplemental security income benefits by the Secretary of Health and Human Services. Western appealed the Secretary's decision to the district court under 42 U.S.C. §§ 405(g) and 1383(c)(3), contending that it was not supported by substantial evidence. The district court granted the Secretary's motion for summary judgment and dismissed the complaint. In this appeal, Western contends that there was insufficient evidence to support the finding that she could perform sedentary work; we agree and therefore reverse the judgment of the district court.

## I. The Claimant's Injuries

The claimant, now 35 years old, was involved in a serious automobile accident on March 2, 1969, in which four people, including her husband, were killed. She suffered a fractured skull, multiple fractures of her left leg and right ankle, several fractured ribs, fractured arms, and a punctured lung. As the district court acknowledged, Western "has never fully recovered from her accident."[1] Her right ankle and foot are permanently dislocated, she has early degenerative arthritis of her right foot, a metal plate remains in her left leg, and she suffers from a thoracic outlet syndrome which causes pain in her back and neck. The back pain and the malpositioned ankle and foot, which prevent her from sitting for sustained periods, climbing stairs or ladders, remaining on her feet or walking any considerable amount, appear to be her most disabling injuries. In addition, Western suffers from several ailments not directly related to the 1969 accident.[2]

Since her accident, Western has had a limited work history. From 1969 to 1973 she held several office jobs involving typing and clerical work. After teaching herself how to operate a keypunch machine, she worked as a keypunch operator from September 1973 to April 1977. She testified that she was forced to leave that job due to severe back pain, and has been unable to work since.[3]

## II. Denial of Benefits

Western submitted her claim for benefits on June 15, 1977, about two months after leaving her keypunch job. The Social Security Administration denied her claim, by form letter, on July 15, and denied her request for reconsideration on August 5. She then requested a hearing before an Administrative Law Judge, which took place on March 29, 1978. On May 3, 1978, the Administrative Law Judge issued his decision denying benefits, finding that although her "impairments prevent her from returning to her former and usual lines of

---

1. District court opinion, reproduced in Record on Appeal, Vol. 1 at 9.

2. Among Mrs. Western's other ailments are a hearing loss due to a perforated eardrum, a peptic ulcer, a pre–diabetic condition, allergies, and a psychological disorder characterized as an adult situational reaction.

3. While Mrs. Western has not worked since April 1977, she has attended classes at the University of Southern Mississippi.

employment," she remains able to perform sedentary work and thus is not disabled under the Social Security Act. Record on Appeal, Vol. 2 at 23. The Appeals Council of the Social Security Administration denied Western's appeal on July 10, 1978, making the Administrative Law Judge's decision the final ruling of the Secretary.

Judicial review of decisions of the Secretary denying benefits under the Social Security Act is both provided for and limited by 42 U.S.C. § 405(g). Under the statute, findings of fact by the Secretary are conclusive if supported by substantial evidence. Of course, no similar presumption of validity attaches to the Secretary's conclusions of law, including determinations of the proper standards to be applied in reviewing claims and the proper allocation of the burden of proof. *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970). We reverse the judgment of the district court because we find that the Administrative Law Judge erred in placing the burden on the claimant to show that she could do sedentary work, and because we find that there was not substantial evidence to support the conclusion that Western could do such work.

### III. The Burden of Producing Substantial Evidence

 Clearly the burden rests on the claimant to produce substantial evidence to establish her disability. *White v. Harris*, 605 F.2d 867, 869 (5th Cir. 1979); 42 U.S.C. § 423(d)(5). But just as clearly, once the claimant meets the burden of showing that she cannot perform her usual line of work, the burden shifts to the Secretary to show that the claimant is able to perform some other kind of substantial work available in the economy. *Lewis v. Weinberger*, 515 F.2d 584, 587 (5th Cir. 1975); *see also Wroblewski v. Califano*, 609 F.2d 908, 912–13 (8th Cir. 1979). In the present case, the Administrative Law Judge specifically found that

"[t]he claimant's alleged impairments prevent her from returning to her former and usual lines of work." Record on Appeal, Vol. 2 at 23. Thus, the burden should have shifted to the Secretary. But the Administrative Law Judge stated that "it is the claimant's responsibility to furnish convincing, credible and substantial evidence that she is entitled to the benefits she claims." Record on Appeal, Vol. 2 at 15. He previously stated that that evidence "must show that not only is she prevented by an impairment or a combination thereof from performing her usual occupation, but that she also lacks the residual capacity to perform other occupations within her vocational potential." *Id.* It thus appears that the Administrative Law Judge placed the burden on the claimant not only to prove that she could not perform her usual work, but also to prove that she could not perform other work.[4]

### IV. Lack of Substantial Evidence

 There was not substantial evidence to support the finding that the claimant could do sedentary work. There was considerable testimony from Western as to the degree of her impairment and the severity of her pain. Without doubt, if her testimony was accepted as true, her claim would have to be granted. No other testimony as to her medical condition was heard; the only source cited by the Administrative Law Judge for his conclusion that Western could do sedentary work was the testimony of a vocational expert:

> (11) A Vocational Expert testified that, based on claimant's age, education, work experience and physical and mental capacity, she retains transferrable [sic] skills and the residual functional capacity and vocational potential to perform a variety of sedentary work activities . . . .

4. The Administrative Law Judge may also have erred in finding that Mrs. Western's pain did not preclude her from working. In his findings, the Administrative Law Judge states that "[t]he preponderance of the evidence fails to establish any medical basis for the degree of subjective distress alleged by the claimant." Record on Appeal, Vol. 2 at 22. If by this statement he meant that pain cannot be the basis of a disability absent objective medical evidence, he is wrong as a matter of law. *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir., 1979).

(12) The Administrative Law Judge accepts the evidence given by the Vocational Expert as credible and convincing that the claimant possesses residual capacity and vocational potential to perform jobs requiring sedentary exertion and work activity
. . . .

Record on Appeal, Vol. 2 at 23. Earlier in his opinion, the Administrative Law Judge stated that the vocational expert testified that the claimant "possess the residual functional capacity and vocational potential to perform a variety of sedentary type jobs." Record on Appeal, Vol. 2 at 21. These statements are incongruous with the expert's testimony; the record clearly indicates that the vocational expert testified as to the types of jobs the claimant could perform "assuming that [the Administrative Law Judge] would find . . . that there is no physical or mental impairment or impetiment [sic] to this claimant to preforming [sic] sedentary work activities . . . ." Record on Appeal, Vol. 2 at 90–91. Thus, the Administrative Law Judge relied on the vocational expert as testifying that the claimant could do sedentary work even though he instructed the expert to assume that she could do such work. In fact, the expert later testified that "from her testimony and from observing and listening to her, I would be in [sic] the opinion that she would not be able to preform [sic] any work, sir." Record on Appeal, Vol. 2 at 97. The hypothetical questioning in this case is quite similar to that which we condemned in *Simmons v. Harris*, 602 F.2d 1233, 1236–37 (5th Cir., 1979). *See also Wroblewski v. Califano, supra*, 609 F.2d at 911, 913; *Davis v. Califano*, 599 F.2d 1324, 1326–27 (5th Cir. 1979); *Padillo v. Califano*, 461 F.Supp. 37, 39 (E.D.Pa.1978). This misuse of the expert's testimony alone warrants reversal.

The only other evidence in that record which might support the Administrative Law Judge's findings is the documentary evidence from medical practitioners. In that sizable array of evidence, however, we cannot find a single document which supports the Administrative Law Judge's finding that the claimant could not perform her usual work but could perform sedentary work. The reports describe a variety of ailments and injuries ranging from minor to quite serious. The only report to imply that the injuries resulting from her automobile accident would not preclude her from working was one by Dr. Wicker. Record on Appeal, Vol. 2 at 177. Dr. Wicker, a neurologist, stated on November 21, 1977, that Western should "continue with working." This brief statement is inconclusive for two reasons. First, Dr. Wicker examined the patient in relation to only one aspect of her problem. Second, it is very unclear what he meant by "continue with working": the record indicates that she was not working during November 1977 and had not worked since April 1977. Record on Appeal, Vol. 2 at 173. If Dr. Wicker meant that the claimant should return to her usual line of work, that conclusion conflicts with, rather than supports, the findings. In short, the evidence that the claimant could not perform her usual work but could perform sedentary work "is equivocal and contradictory and does not rise to the level of substantial evidence." *Jackson v. Richardson*, 449 F.2d 1326, 1330 (5th Cir. 1971). While our role in reviewing these cases is limited, we must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Simmons v. Harris, supra*, 602 F.2d at 1236. Upon examining the record, we fail to find substantial evidence to support the Administrative Law Judge's conclusion that the claimant could not perform her usual work but could do sedentary work.

Accordingly, we reverse the judgment of the district court, remand the case to that court, and direct the district court to remand the case to the Secretary for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.